Three cases on for argument this morning, but before we get to the cases, we have a motion for admission to the Bar of the Court. Judge Clevenger. Good morning, ladies and gentlemen. I move the admission of Michael to Koenig, who is a member of the Bar in good standing of the highest court of the state of Wisconsin. I have personal knowledge of his credentials and his skills. I'm satisfied that he possesses the necessary qualifications. I can say that much and attest the same because Michael of the last year has been my law clerk. And because I have a thumb on the scale, so to speak, in terms of voting on this motion, I'm going to recuse myself and ask my colleagues to attend to the motion. Judge Clevenger, the motion is granted and the applicant will be admitted. Congratulations. And if you would now turn to Ms. Tomlinson, who will administer the oath. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court, and that you will support the Constitution of the United States of America? I do. Welcome to the Bar of the United States Court of Appeals for the Federal Circuit. Thank you. Our first case for argument today is number 06-3286, Gayen against the Office of Personnel Management. Mr. Chester? Yes, Your Honor. Very well. Your Honor, it's Joe Chester. I represent Tom Gayen, a former United States Postal Service employee, in this claim for disability pension benefits. Mr. Gayen was approved for those benefits by the Office of Personnel Management on three separate occasions. There's an initial approval and two subsequent approvals about a year apart. The initial approval occurred in 2002. It ended up, though, that Mr. Gayen got a little jammed up with helping relatives on the drugs team, and that's no way to get around that. He was indicted and ultimately convicted. He spent a little time. However, the sentence provisions were attached to my colleague's brief. I'm not sure they're part of the record, but I have no objections to it. That is, it showed that he had a good propensity for rehabilitation, and he did. So he's out of prison, and the postal inspectors then write to the Office of Personnel Management, Office of Inspector General of that agency, and say, Look, it violates common sense that we should be giving disability benefits to this fellow. And the statute, then, there was a disability benefit. Is that letter in the record? That's part of my appendix, pages 9 and 10 of the appendix. And then it was wrapped around with a very brief memo from the Inspector General branch, and it was directed to the reviewing agency. The postal inspector said, Look, it violates common sense. And then page 8 in the appendix, the manager of disability reconsideration gets a note from the retirement inspection branch saying, Check this out, and then report back to us. Well, of course, it was inevitable, I can respectfully submit. We deposed these agencies without much success in finding out what was really going on. It was inevitable that the benefits were reconsidered, and the statute permitting reconsideration was, the reg permitting reconsideration was cited. And the reg is very simple. It says, quote, At any time if there is an indication of error in the original decision, comma, such as fraud or misstatement of fact, comma, or if additional medical documentation is needed. So we dealt with the OPM representative, and the requests that were made to us were, Well, let's get additional medical documentation. And we did. So we got a letter from the original physician that had written reports at the time that the benefits were approved, and the report is also part of the record, and said, Yeah, I meant it back in 02, and it's still my opinion that he's disabled. And the agency, although we certainly offered, said, Did fail to get an independent medical exam or whatever it would be called on the OPM level, a referee medical exam, nothing. And then the benefits were denied, and it went to Judge Fishman of the MSPB, and he himself, in his opinion, which is attached to the brief, said, Look, the benefits, the medical record shows that the benefits are available. But apparently Judge Fishman cited something saying that otherwise the appellant, the claimant, had a stellar, stellar record with employment with the agency. And I suppose that that's as close as we've gotten at any point to what this supposed mistake was. So I respectfully submit to the court. So do you think the error was just they changed their mind? Yes, Your Honor. That didn't constitute an error under the reg. In other words, the error is qualified by, as I put in the comments, those are important, because the error had to do something like mistake or fraud or something that the appellant did. But you said such as. Such as. Yes. Those are examples. I mean, you acknowledge that that leaves open the possibility for other kinds of error also falling within. Again, yes. But I suggest that both of those, both of those possibilities, fraud or misstatement, would have to do with something the appellant did, not something that the agency overlooked. What about a case in which it's plain that the claimant has recovered fully from whatever it was that was the disabling condition or thought to be a permanently disabling condition? But it turns out three years later that there's plain evidence that there's been a full recovery. Judge, that would be a different situation in this case. Well, I understand. But in order to test the proposition of how broad the regulation is, I need to know how you would view the regulation as applying or not applying to that case. If I may, being ill, legitimately receiving benefits and getting better three years later is not an error. No, it's not. But would the agency be in its, does it would have authority under the regulation to say that the person now does not have a condition? Yes, Your Honor. And would that be a ruling that could be justified in light of the language of the regulation? And if not, what would it be justified? Well, they wouldn't use this right to do that. I don't. What would they use? There's a different, there's a recertification standard. In fact, Gagan was recertified twice. Yeah. It was the 02, the 03, and the 04. Okay. So apparently on an ongoing basis, it's up to the claimant to submit information and then the agency continues to rule on an annual basis. It's somewhat similar to Social Security that looks at a case every three years. But in this instance, those approvals took place and there was no question about the initial decision. This section is kind of unique, and this may be, if my humble attempts at chevronizing it, I can't find anything that decided this particular case. This may be, in my humble career, a case of first impression. And the issue being that denying benefits because a mistake was made at the beginning of the process is different from saying that the claimant got better and doesn't need the benefits anymore under the notion of you're not disabled anymore. That's not the way the agency proceeded. In fact, the reviewer of the agency treated it as, well, get more documentation. They used a second disjunct. And it's very clear in the judge's opinion that that second disjunct was satisfied, that is, additional medical documentation is needed. There's no question that there's like a conflict in the medical documentation. Well, suppose that the agency simply made a mistake, but it was a mistake plain on its face and anyone should have recognized it, that in the context of deciding this case, they meant to check the box that said no benefits and inadvertently checked the box that granted benefits so that it was akin to a clerical mistake. There's no question the merit of the record was such that it was a mistake of clear and indisputable proportion. But nonetheless, they issued a statement that granted benefits inadvertently, a clerical error. Maybe an assistant typed it up wrong or something. Would they be allowed to come back and rescind it then under this provision? Of course. Under this provision? But I thought that you wanted us to limit the kind of error to only if it was caused by the applicant. Well, no, Your Honor. I suggest that what the court minimally must require the agency to do is identify the error, which hasn't happened yet. And it's only fair to identify the error because then it gives you something to fight about at the point of the MSPB. In other words, we were sort of doing the MSPB in the back end. Didn't they identify the error as the medical evidence doesn't demonstrate that your condition would continue with the same intensity for one year? I mean, isn't this their identification of the error? Judge, Judge Fisman's opinion is clear that the medical evidence establishes the records of disability. Shouldn't we look at sort of what the Achilles heel of your case is at the moment? The judge here at page 23 in the record, page 6 of the opinion, reviewed the evidence and said, I find he does suffer from stress, anxiety, and depression. Goes on to say, that being so, the question is whether or not this condition adversely affects the ability of your client to perform his work. Because you can't get a disability retirement as I understand it unless the disability you have adversely affects your ability to perform. Right? Absolutely correct, Your Honor. So as I read the opinion of the AJ, the AJ said, OK, Mr. Gagin has demonstrated, shown up his disability, but he has failed to show that his disability adversely affected his capacity to work. Except the way that the way that Isn't that the rationale? Yes. The way the AJ pointed it out, I don't mean to interrupt. The way the AJ pointed it out, he said, look, he had a stellar career. And that probably sticks in my mind, so that's probably used. He had a wonderful career. But that doesn't mean that there was any infirmity or defect in the medical record that existed at the time. And if there were, it's In the initial, do we have in the record the initial grant of OPM, the final decision granting the disability retirement? Yes, there's the approval letter. And what I'm trying to get at is, do we have an assessment by OPM at the time of the original grant of the disability retirement that his disability indeed did adversely affect his ability to perform in the workplace? Well, Judge. I didn't see that. That's right. First Let me run you through it this way. Let's assume that the first time through, someone comes to OPM and they supply evidence that shows, yes, sirree, no question about it, disability. But the person that's seeking the disability retirement makes no showing whatsoever that the disability adversely affects the workplace. Okay? Makes no showing. OPM would turn down the application, wouldn't they? That's right. And they approved it three times. Right, but I have no showing that, you're not showing me that there originally was a determination that there was adverse effect in the workplace. It looked to me as if what the record was showing me was that nobody bothered or no one looked at the question of whether the disability adversely affected performance in the workplace until this last go-around when someone at OPM looks at the situation and says, well, there's no adverse effect on your client's ability to work. Notwithstanding a disability. Your Honor, nobody before the judge used those magic words, not a doctor. In fact, the inspector general taking the lead from the postal inspectors simply used the words common sense. So I respectfully submit to Your Honor that if this statute means anything, that if some error was made, that the agency would have to get a statement from some reviewing physician, even four years later, to say, well, it doesn't look like there's this connection that the agency originally apparently found. Counsel, you say no one says it before the AJ, but in the letter that you referred us to, the letter signed by Patricia Beach, acting chief, this is your reconsideration where they, the letter you directed us to a minute ago on page 14 of your appendix. She says, lastly, this is the very end of her letter, lastly, your medical records did not show that your service deficiencies were caused by your medical condition. Isn't that her statement of the same thing that the AJ held, which is, okay, so it wasn't, the AJ didn't come up with this anew for the first time. This is based upon what the reconsideration, the rescission letter was OPM's decision. In this case, in medical causation cases, it means medical causation, and the question is, there's undisputed testimony and evidence in the record that the claimant's physician said that there's medical causation as impact on the workplace. It's just that the government never, never got any contradictory evidence. So what I'm stating is that, is that maybe, maybe the government could struggle and not claim it's an additional medical documentation case. Well, but to come back to the issue, I was raising on page 10 in your appendix, the second page of the letter to Inspector General Vint from Mr. Schaefer. On page two, he points out, again, that Mr. Dagan's merit reviews are not indicative that the individual was unable to function in the workplace. So the agency seems to be saying to OPM in the reassessment of your client's qualifications for disability retirement, say, well, his disability doesn't affect his ability to work. Yes, Your Honor. The topic, looking at the letter from, well, the postal inspector, presuming, I suppose, to render a medical opinion, says there's a stellar career, there's no use of sick days or anything of that nature, and then he concludes that no hours are sick, balances of the sick leave would be hardly indicative of the individual's inability to work. That's not words that can be sustained by a postal inspector, it has to be sustained by a physician, and the government never bothered to do that at any point, simply accepting. Whose burden is it to prove that the disability does adversely affect the employee's ability to function in the workplace? It's the employee's obligation to bring forth medical evidence, and it's the government's obligation. Could you help me? Is there evidence in the record, medical evidence, from somebody who says Mr. Gagin is not qualified to perform in the workplace? No. Well, I'm sorry, yes. Dr. Carman's report, which is his bring-down report, which is on page 16, it repeats his conclusions from the 2002 opinion. So this was the bring-down report that we provided from Dr. Carman. And it points out that the stressors were escalating between 98 and 99, 94 through 2001, and he identifies treatment, and he identifies medication, and he states, through my observations, contributed to deteriorate. Right, but I see the bottom-line conclusion, the doctor saying the symptoms would have affected his work performance during the time 1994 to 2001, but during that time period he's receiving accolades. Correct? Yes, that's correct. Right, well, how do you get accolades if your mental condition is such that you really can't perform? Isn't there a disconnect? Not necessarily, unless a physician says that there's a disconnect in the medical causation case, not a postal inspector. I respectfully submit. Counsel, isn't it kind of like, you can get a 95 on an exam, and, you know, boy, if I hadn't had the flu, I would have gotten a 100. He's still getting a 95. How is he incompetent or unable to perform his job during this time? He's getting superior performance evaluations. He was obviously an exemplary employee during that same time. That's sort of the way I'm looking at it. How am I wrong? Or put another way, Judge, you can work through the pain. Probably the NFL performers do it all the time. But if there's something funny about working through the pain, that needs to be the conclusion of a physician and not, I respect. But this physician didn't conclude he couldn't work. He just said these symptoms would affect his work performance. Is there someone who said he couldn't work because of this? Sure, if I have the flu, it's going to affect my performance. It means I may not function quite as quickly, quite as efficiently. I may not have as much energy. I might not have as good a focus. It doesn't mean I can't do my job. So what evidence did you present that shows he couldn't do his job? Is this the only medical evidence? That's correct. He basically, Judge Carman, Dr. Carman, incorporates what his more lengthy reports were in O2. We don't have the O2 reports, right? That's correct. Are those part of the record of this case? Well, they should be part of the OPM file. Well, was it before the MSPB? Actually, no, it is not. Actually, I take it back. There is the whole panoply of letters that was incorporated and made an exhibit in front of the MSPB. What I heard you say earlier sort of has now distilled to me to be what may be your best argument, which is you're saying if OPM is going to reverse a previous determination that an employee is entitled to a disability retirement and they're going to use the error regulation as the basis for the revocation of the previous grant, they have to tell you what the error was. Affirmative, Your Honor. So you're saying that OPM never told you. That first time you learned was from the A.J.'s opinion, and the A.J.'s opinion tells you that the error must have been a failure previously to adjudicate adverse effect on the workplace from the disability. And you're saying you don't know whether that was OPM's ground or not. I suppose your argument is that the decision to rescind is wrong because there was no stated reason error. Therefore, you get reinstatement and you get your disability retirement, but OPM could come back and take another whack at you. That's correct, Your Honor. And that is that the determination letters are the pleadings, if you will, that frame the issues that we have to follow. I just want to make certain that the maximum of what your client would get out of this was to have the disability retirement benefits backdated and paid back to the date when they took them away. And, of course, you're always subject to recertification or other forms of exposure for losing, right? Yes. Let me ask you one quick legal question. The government cited the Lindahl case. My understanding is that the statute in which Lindahl was predicated has an exception for mental condition. Does that exception apply here? In other words, do we have the authority that Lindahl would deny us in non-mental cases to review the facts? Well, obviously, Judge, the way I would argue that is the likelihood… Are you familiar with the statute that Lindahl was predicated on? No, I'm not. Oh, okay. Well, I'll ask the government then. Okay, very well. We'll save you a minute or two. Thank you. Mr. Borah, let me ask you that same question. You're familiar with the statute that Lindahl was predicated on, and the statute, if I recall it correctly, says that while there's a general rule which Lindahl construed to bar review by this court of findings with regard to disability, that that general rule does not apply in cases of mental condition disability. Is my recollection correct as to that exception? I believe there is an exception for mental disabilities, Your Honor, but I also believe that exception only applies where the disability was involuntary, meaning where the agency had, instead of, in this case, where Mr. Gagin had a platent disability. I see. So other than that, your submission is that where there's a voluntary disability retirement that Lindahl bars us from reviewing in all instances. That's correct, Your Honor. Okay. Thanks. It may have pleased the court. Well, that's your trump card, isn't it? I mean, case is over. If Lindahl applies, right, then whether or not there is or is not error, assuming that the error regulation is the proper tool to use here, the case would be over. We certainly believe so, Your Honor. The only way Mr. Gagin can still be successful in this appeal is under Lindahl. What's wrong with Mr. Gagin's take on the error statute to say error, e.g., fraud, something like that, to say basically you've got a recertification issue here, not an error issue? Do you agree with Mr. Gagin that there are recertification regulations that deal with OPM's capacity to take another look at the merits of an earlier decision? There are certainly recertification regulations that allow and, in fact, require OPM to consistently They're basically looking out over the landscape of previously granted disability retirement and trying to decide whether the conditions continue to exist. Correct, Your Honor. Those regulations, I would argue, though, speak more to OPM's concern that or OPM's recognition that someone's disability can, in fact, get better, that while at the time an employee may have been granted disability, they could have recovered to an extent that they are now capable of rendering efficiency to services. Now, do you agree with me that the rationale of the administrative law judge, which became the rationale of the board here, for sustaining OPM's cancellation of the disability retirement was because of a failure to show that his disability adversely affected his work? Is that right? That is correct, Your Honor. Okay. Now, how do I know that that's the ground on which OPM, using the error regulation, decided to cancel the disability retirement? Well, I believe OPM's rescission decision in December of 2005, in fact, states that Mr. Gagin, while in fact suffering from a disability, failed to establish that that disability had Can you show that to us in the record? Sure. I believe it is the appendix attached to Mr. Gagin's brief at page The decision begins at page 11. At page 14, Your Honor, it states at the top of the first paragraph, The medical evidence did not demonstrate that your condition would continue with the same intensity per year from the date you filed your application. Lastly, your medical records did not show that your service deficiencies were caused by your medical condition. Rather, your records show your deficiencies were caused by conduct unbecoming to a federal employee. Now, Mr. Chester has repeatedly stated that there was this letter from the postal inspector that said essentially that Mr. Gagin's performance was stellar up until 2001 when he applied for disability, and that's true. What was the evidence of service deficiencies? The evidence of service deficiencies was the fact that he was placed on indefinite suspension upon being arrested for drug possession. There is a letter from Mr. Gagin's supervisor at I apologize, Your Honor, it is at page 16 of our brief. Mr. Gagin's supervisor states that The letter states that Mr. Gagin has been complaining that he's been suffering from a disability, but nonetheless, the reason he is now having a performance deficiency is because he has been arrested for drug possession and as a result has been suspended. All of this was considered Yeah, but I mean that's not when you're talking about whether or not a disability affects your ability to do the work, right? Aren't you asking, for example, if somebody's job was to lift, you know, heavy packets of mail, the person had lost the arm or something like that, had it adversely affected? The notion that you're put on indefinite suspension for one reason or another seems to me not to be a rational deficiency in work that you will compare that to the physical condition. Well, I think that's the point, Your Honor. Prior to his arrest, there was no evidence from 1995 when Mr. Gagin claims that his disability began to 2001. There was no evidence of any sort of performance deficiency. In fact, it was just the opposite. Then why did you grant and grant and wasn't it reconsidered on several occasions? Are you saying that the agency erroneously not only granted but renewed upon reconsideration on several occasions? Well, Your Honor, we do argue that the 2002 granting Mr. Gagin disability benefits was erroneous. There was only one, in fact, reconsideration, and that as well was erroneous. That was in 2003. I think the evidence that that was an error was, in fact, that the initial decision on Mr. Gagin's disability application was set forth in December of 2001. That decision in detail stated that Mr. Gagin's request was denied for the same reasons that were subsequently the basis for the rescission decision in 2005, namely Mr. Gagin could not establish that any disability from which he was suffering. But then somebody—I'm sorry. Go ahead. You were going to say the same thing I was. But then somebody obviously decided that that wasn't right and changed their mind. So it's not like they overlooked this prong of the test, right? They may have made the decision in 2001, but then in 2002 they changed their mind and decided it was sufficiently established. Well, that's the problem, Your Honor. And it goes back to the question you asked Mr. Chester about what would happen if there was, say, a clerical error, someone checking the wrong box. The 2002 decision offered no discussion or application of the requirements for eligibility disability benefits as OPM's regulations expressly require. It simply said that you've now been determined eligible for those benefits. So I think there are two real errors here. One, there is the fact that Mr. Gagin has not established that there was any connection between his disability and any alleged service deficiencies. But there was also an error in the fact that the 2002 decision didn't follow the express requirements of OPM's regulation that OPM provide essentially a basis for its decision, which it didn't do, neither in 2002 or in 2003. Now, it certainly seems to me not contrary to intuition, at least, that you could have a circumstance in which someone had some kind of, let's say, latent psychological problems, which would be so exacerbated by a traumatic event such as being arrested for a serious felony that the person's ability at that point to continue to work, setting aside whether they were taken off the job or not, but that their ability to work would just be totally compromised. Isn't that essentially what the initial finding was, that setting aside the reason, that is to say, the arrest, he went from, to use Judge Moore's example, 95 to below 60 by virtue of this event, this traumatic, precipitating event that occurred in July. That would be, if that were true, that would be a basis for disability, wouldn't it? Notwithstanding the reason. I mean, it doesn't have to be job-connected. I mean, it could be something that happens in the rest of your life, such as your arrest, and if you're incapable of continuing to work, you get disability. Certainly, Judge Bryce, that's a possibility. But again, the first decision that actually considered Mr. Gagan's application in 2001, in fact, said that wasn't sufficient. In 2002, there was no decision that said, you know, we now recognize that because you were arrested, any sort of condition from which you were suffering has been exacerbated. There was nothing that happened in 2002 in terms of a written decision being formulated, which in fact was part of the problem. In 2005, OPM went through all the medical evidence that was presented in 2009 and 2002 thoroughly and walked through essentially each report that was provided by Mr. Gagan's doctors and still came to the conclusion that there was no connection between Mr. Gagan's disability and any of that service deficiencies. I think the fact that this error is most prominently highlighted by the fact that Mr. Gagan's brief admits that had he not been granted these disability benefits, he would have gone on and kept on working. Essentially, he's admitting that he wasn't actually eligible for disability benefits under either the statute or the regulations. Well, had he not been removed based on the conduct? I mean, that's a different question. Obviously, it's not presented. Correct, Your Honor. But to the extent the statute and the regulation require that an applicant establish that they're unable to provide efficient and useful service, either in their current position or another position which the agency provides them in an attempt to accommodate this disability, Mr. Gagan essentially said he could have provided efficient and useful service. Isn't your bottom line—I just don't want to get lost in this—isn't your bottom line position that if the court agrees that 5 CFR 831.1206.2, the error rig, was the proper tool, was an acceptable tool to use, then the game's over? All the discussion we're having about the merits of whether or not Mr. Gagan was disabled, the merits of whether his disability did or not affect the workplace, is off the table. Absolutely, Your Honor. Gone. Absolutely. I mean, we've been talking about something over which we have no jurisdiction. If the error rig was the right tool.  Or an acceptable tool. That is correct, Your Honor. The only other point I want to make— I mean, it's not—the Supreme Court is the one that told us we have no jurisdiction. We didn't say that to them. No, absolutely, Your Honor. And to the extent that Mr. Gagan wants this court to consider the factual underpinnings of OPM's determination, this would underline all this court conduct. Lastly, Mr. Gagan states that—sort of implies that OPM should have been stopped from rescinding his disability benefits for the fact that he states in his brief he could have just kept on working. And the Supreme Court has stated in OPM v. Richmond that where a payment is authorized by statute, OPM has an obligation to investigate a credible allegation that that payment is being incorrectly made and cannot be stopped from doing so. Do you happen to have with you—and there's no reason you should, but if you just happen to have a copy of the statute, I think it's 8461D. Is that the pertinent provision? I'm trying to make sure that I have clearly in mind the breadth of the mental exception. You say it's only as to involuntary. I do, Your Honor. If you have it, could you give me the text of that or read it to me? It's pretty short, I think. And I'm thinking of D-2, I believe it is. I believe that's correct. It's 5 U.S.C. section 8347, D-2. 47, okay. Yes, the text states that D-2, in the case of any individual found by the office to be disabled in whole or in part on the basis of an individual's mental condition, and that finding was made pursuant to an application on or by an agency for purposes of disability retirement under section 8347. So that's the critical language, on or by the agency. That's right. So that makes it involuntary. Correct. If the agency is pushing you out for what the agency considers to be a mental reason, then you get full appellate review. Thank you. Yes, sir. I'm not recollecting it. For these reasons, we respectfully request that this Court firm decision be expedited. Thank you. Mr. Chester, do you have any rebuttal? We'll give you a minute. Yes, Your Honor. Your Honor, just real briefly, this record clearly shows that the agency's theory shifted from the get more documentation prong to the somebody made a mistake, which was later, I guess at first, identified by the judge. What the judge identified is that he would have done it differently in the first place. It wasn't an error. There's no way to stretch that concept to be an error. And the fact that the agency's theory shifted from get more documentation or we need more documentation to something was wrong in the first place shows that the thing was muddled in the agency's mind, and it shouldn't have justified denying benefits, or at least if you're going to deny benefits, you've got to be a little more clear than that from the very beginning, at least have some theory that we can, you know, legitimately battle in front of the MSPB. The theory should not be supplied afterwards. They should be supplied in advance so that we have a fair fight. Okay. Thank you. Thank you both for counseling. The case is submitted.